# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOSEPH NEATHERY (#333584)**                              **CIVIL ACTION**

**VERSUS**

**STEVE RADER, ET AL.**                                    **NO. 13-658-BAJ-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the

Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served

with the attached Report to file written objections to the proposed findings of fact, conclusions of

law and recommendations therein.  Failure to file written objections to the proposed findings,

conclusions, and recommendations within 14 days after being served will bar you, except upon

grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE

WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on December 30, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JOSEPH NEATHERY (#333584)                                    CIVIL ACTION

VERSUS

STEVE RADER, ET AL.                                          NO. 13-658-BAJ-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petitioner, Joseph Neathery, challenges his conviction, entered in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on two counts of aggravated burglary and two counts of armed robbery.  The petitioner contends that he was subjected to double jeopardy when he was adjudicated and sentenced as a habitual offender after the passing of his full-term release date on his underlying sentence and that his rights to due process and a speedy trial was violated.

## Factual Background

The facts, as taken from the decision of the Louisiana First Circuit Court of Appeal, are as follows:  On or about January 15, 2001, at approximately 7:30 p.m., the defendant and three other assailants knocked on the door of a townhouse located on Kennesaw Drive in Baton Rouge, Louisiana.  Gretchen Fontenot, one of the residents of the townhouse, opened the door and observed all four assailants as they stood at the doorway armed with firearms.  As Fontenot attempted to close the door, the assailants forced their entry into the home and pushed Fontenot to the living room floor.

At the time of the forced entry, Hansel Temple, the other resident of the townhouse, was in the kitchen.  Temple unsuccessfully attempted to jump out of the kitchen window when the

defendant put his assault rifle up to Temple's head.  The assailants pulled Temple into the living room of the home.  During her testimony, Fontenot stated that she screamed several times and added, "they told me if I didn't shut up they were going to kill me."  The assailants made several demands for items, such as drugs and money, and used duct tape to tie up the victims.  Fontenot and Temple testified that they did not have any drugs in their home, but that the assailants exited the home after collecting money, jewelry, clothing, and other items.

On the preceding night, the same four assailants, including the defendant, had knocked on the door of the same residence.  On that occasion, the victims had not opened the door.  After Fontenot had raised a window, the assailants indicated that they were looking for an individual named Chad and a party.  The victims had informed them that they did not know anyone named Chad and were not having a party.  The assailants then left.  According to the statement given to the East Baton Rouge Parish Sheriff's Office by the defendant, the assailants had intended to commit the offenses on that night but delayed doing so.  *State v. Neathery,* 07-1226 (La. App. 1 Cir. 12/1/2007).

## Procedural history

The petitioner, Joseph W. Neathery, was charged by bill of information filed March 20, 2001, with two counts of aggravated burglary (counts I and II), violations of La. R.S. 14:60; and two counts of armed robbery (counts III and IV), violations of La. R.S. 14:64, and pled not guilty. Following a bench trial, he was found guilty as charged on all counts.  On April 2, 2003, he was sentenced on counts I and II to five years at hard labor, per count.  He was also sentenced on counts III and IV to ten years at hard labor, per count, without benefit of probation, parole, or suspension of sentence.  The sentences were ordered to run concurrently.

Thereafter, on February 11, 2004, the State filed a habitual offender bill of information against the defendant.  Following a hearing, he was adjudged a second-felony habitual offender.  On counts I and II, he was sentenced to fifteen years at hard labor, to be served concurrently.  On counts III and IV, he was sentenced to fifty years at hard labor without benefit of probation, parole, or suspension of sentence to be served concurrently with one another and with the sentences imposed on counts I and II.  On appeal, the court vacated all four original sentences in the case, vacated the habitual offender adjudication, vacated all four enhanced sentences in the case, and remanded for dismissal of one of the aggravated burglary convictions, either count I or II, as elected by the State.  *See State v. Neathery,* 2005–0026 (La.App. 1st Cir.11/4/05), 913 So.2d 893.

Upon remand, the State dismissed count II, and the trial court re-imposed the original sentences on counts I, III, and IV.  Thereafter, following a habitual offender hearing, the petitioner was adjudged a second-felony habitual offender on count III, and was sentenced, on count III, to fifty years at hard labor without benefit of probation, parole, or suspension of sentence.  Following the petitioner's second appeal, the court affirmed the convictions for counts I, III, and IV and affirmed the sentences for counts I and IV, but vacated the habitual offender adjudication and sentence on count III, and remanded with instructions.  *See State v. Neathery,* 07–1226 (La. App. 1 Cir.12/21/07), 973 So.2d 179.

On February 1, 2011, the day before the petitioner was scheduled for release for "completion of sentence," the State instituted habitual offender proceedings against him for a third time.  The petitioner moved to quash, arguing the habitual offender bill was untimely.  Following a hearing, the trial court granted the motion to quash and ordered the release of the petitioner.  The State moved for a stay to allow review of the granting of the motion to quash, but

the trial court refused to stay the proceedings.  The State applied for supervisory writs, and the court reversed the refusal to issue a stay, finding that even absent habitual offender proceedings, the trial court had never imposed sentence on count III after the court vacated the sentence in the petitioner's second appeal.  See *State v. Neathery,* 2011KW1106 (La. App. 1 Cir. 6/22/11) (unpublished).  Thereafter, on June 24, 2011, court of appeal issued the following unpublished action on the State's application for emergency supervisory writs:

> "**WRIT GRANTED.**  The trial court's ruling granting the defendant's motion to quash is reversed, the motion is denied, and this matter is remanded to the district court for further proceedings.  The trial court abused its discretion in determining that the State's delay in filing the instant multiple offender bill of information was unreasonable.  There was no abusive or vindictive reason for the delay, and the defendant was still incarcerated at the time the State made its filing.  *See State v. Muhammad,* 2003–2991 (La.5/25/04), 875 So.2d 45."  *State v. Neathery,* 2011KW1145 (La. App. 1 Cir. 6/24/11) (Pettigrew, J., dissenting), *writ denied,* 2011–1537 (La.7/14/11), 67 So.3d 474.

On June 27, 2011, the trial court sentenced the petitioner, on count I, to five years at hard labor; and on counts III and IV, on each count, to ten years at hard labor, with the sentences to run consecutively to each other.  Thereafter, following a habitual offender hearing, the petitioner was adjudged a second-felony habitual offender on count III.  The trial court then vacated the sentences imposed on June 27, 2011, and on count I, sentenced the petitioner to five years at hard labor; on count III, sentenced him to forty-nine and one-half years at hard labor; and on count IV, sentenced him to ten years at hard labor, with the sentences to run concurrently with each other.  Noting that predicate # 1 and count III were both crimes of violence, the trial court found the petitioner had failed to show he was exceptional under the habitual offender law and rejected his request for a downward departure from the statutory minimum sentence for count III.  The petitioner moved for reconsideration of sentence, but the motion was denied.

Thereafter, the petitioner appealed, contending the three-year delay in pursuing habitual offender proceedings following his second appeal violated his right to speedy trial and due process. Additionally, in a pro se brief, he argued: the habitual offender sentence imposed on count III placed him in double jeopardy; the State failed to sufficiently prove he was a habitual offender; and the State made false allegations of convictions and arrests against him in connection with 2011KW1106. The habitual offender adjudication and sentence on count III were affirmed. *See State v. Neathery,* 2012-0162 (La. App. 1 Cir. 12/21/12), 2012 WL 6681803.

## Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson,* 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id.*

*See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").  State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The State contends that, applying this standard to the petitioner's claims, there is no basis for the granting of habeas relief.

**Substantive Review**

The petitioner first alleges that the sentence imposed by the trial court on June 27, 2011 on Counts I and IV, wherein the trial court ordered that the petitioner's sentences be served consecutively, violated the Double Jeopardy Clause of the Fifth Amendment since the trial court had previously ordered that the plaintiff's sentences be served concurrently, and the plaintiff had already completed these sentences.  The Double Jeopardy Clause of the Fifth Amendment protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).  In the instant matter, the petitioner alleges that he has been sentenced to serve multiple punishments for the same offense.

On November 7, 2011, following a habitual offender hearing wherein the petitioner was adjudged a second-felony habitual offender for the third time, the trial court vacated the sentences imposed on June 27, 2011, and on count I, sentenced the petitioner to five years at hard labor; on count III, sentenced him to forty-nine and one-half years at hard labor; and on count IV, sentenced him to ten years at hard labor, with the sentences to run concurrently with each

other, with credit for time served.  As such, any potential error by the trial court on June 27, 2011 in ordering the sentences to be served consecutively was corrected on November 7, 2011.

To the extent the petitioner is complaining of the use of his prior convictions to enhance his sentence, this claim is also without merit.  As stated by the Court in *Whitte v. U.S.,* 515 U.S. 389, 400 (1995), the United States Supreme Court has,

> "made clear… that "[e]nhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes which are common place in state criminal laws, do not change the penalty imposed for the earlier conviction."  *Nichols v. U.S.,* 511 U.S. 738, 747 (1994)  (approving consideration of a defendant's previous uncounseled misdemeanor conviction in sentencing him for a subsequent offense).  In repeatedly upholding such recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment imposed for the later offense "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes," but instead as "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."  *Gryger v. Burke,* 334 U.S. 728, 732 (1948).  *See also Spencer v. Texas,* 385 U.S. 554, 560 (1967); *Oyler v. Boles,* 368 U.S. 448, 451 (1962); *Moore v. Missouri,* 159 U.S. 673, 677 (1895) (under a recidivist statute, "the accused is not again punished for the first offence" because " 'the punishment is for the last offence committed, and it is rendered more severe in consequence of the situation into which the party had previously brought himself' ")".

The petitioner next alleges that his right to due process and a speedy trial were violated when the State filed the habitual offender bill at issue three years after the proceeding was remanded back to the trial court and only hours before the petitioner was scheduled to be released from prison.  The petitioner and his counsel raised this issue in the court of appeal. Relying upon *State v. Muhammad,* 03–2991 (La.5/25/04), 875 So.2d 45, the Louisiana First Circuit resolved that the delay in filing the multiple offender bill was not unreasonable, finding that there was no abusive or vindictive reason for the delay and that the petitioner was still incarcerated at the time the State made its filing.  *See State v. Neathery,* 2011KW1145 (La. App. 1 Cir. 6/24/11) (Pettigrew, J., dissenting), *writ denied,* 2011–1537 (La.7/14/11), 67 So.3d 474.

In *State v. Muhammad,* 03–2991 (La. 5/25/04), 875 So.2d 45, the Louisiana Supreme Court determined that the Louisiana Habitual Offender Statute, La.Rev.Stat. § 15:529.1, did not contain a prescriptive period for completion of the multiple offender proceedings. The court also considered that it had previously held that the statute as written contemplated that a multiple bill must be filed within a reasonable time to be determined on the facts and circumstances of each case based on speedy trial concepts. The court therefore overruled its prior precedent to the contrary and held that there was no reason for its jurisprudence to create a bright line deadline by which to complete the multiple offender proceeding, when the legislature had not done so in the statute.

The court held that the State timely filed the multiple bill and that Muhammad had made no showing of bad faith in the State's initiation of the proceedings. The court also held that there had been no inordinate delay in completing the proceedings under the circumstances of the case. The appellate delays were not abusive and could be attributed to both the State and the defense. Muhammad was on notice and knew from the time of his original sentence that the State was pursuing a multiple bill. The court also noted that Muhammad had not been released from custody before the State's filing of the multiple bill or completion of the proceedings against him. The Louisiana Supreme Court found that the timing of the filing of the multiple bill and the timing of the completion of the proceedings were sufficient under state law.

Muhammad's subsequent habeas petition was dismissed by the Louisiana the District Court for the Eastern District of Louisiana. As noted by the Louisiana District Court for the Eastern District of Louisiana, the sufficiency of a state court bill of information or indictment will not be reviewed under Section 2254, unless it can be shown that it so defective that it deprives the convicting court of jurisdiction. *Muhammad v. Hubert,* Civ. Action 06-1420, 2007

WL 3104331, at *12 (E.D. La. October 22, 2007) (citing *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir. 1994)).  If the highest state court has found the bill of information sufficient under state law, a federal court need not address the issue.  *Alexander v. McCotter,* 775 F.2d 595, 598 (5th Cir. 1985).  By denying the petitioner's writ application, the Louisiana Supreme Court has so ruled in the instant matter.

As was further noted in *Muhammad v. Hubert,* 2007 WL 3104331 (E.D. La. October 22, 2007), the application and interpretation of Louisiana's habitual offender statute is an issue left to the Louisiana Supreme Court.  A state's failure to follow its own sentencing procedures is not reviewable through federal habeas corpus.  *Joseph v. Butler,* 838 F.2d 786, 789 n. 2 (5th Cir. 1988); *Haynes v. Butler,* 825 F.2d 921, 924 (5th Cir. 1987).  Claims that a state court improperly applied state law do not constitute an independent basis for federal habeas relief.  *Estelle v. McGuire,* 502 U.S. 62, 67 (1991).  A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley,* 16 F.3d 64, 67 (5th Cir.1994) (quotation omitted).

Instead, this Court's analysis focuses only on due process considerations, and due process requires that the Court grant the writ only when the errors of the state court made the underlying proceeding fundamentally unfair.  *Lisenba v. People of State of California,* 314 U.S. 219, 236-37; *Neyland v. Blackburn,* 785 F.2d 1283, 1293 (5th Cir. 1986).  A criminal proceeding is fundamentally unfair when the error fatally infects the trial or is of such a quality that it necessarily prevents a fair trial.  *Id.; Peters v. Whitley,* 942 F.2d 937, 940 (5th Cir. 1991).

The petitioner has failed to allege a due process violation arising from the timing of the multiple offender proceedings against him or the lack of a prescriptive period in the statute itself. His assertion that Louisiana should have a time limit on such prosecutions fails to state a

cognizable federal habeas corpus claims. "The Due Process Clause does not, ... require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused." *Parke v. Raley,* 506 U.S. 20, 32 (1992) (*quoting Medina v. California,* 505 U.S. 437, 451 (1992)). Enhancement proceedings are not determinative of guilt or innocence and do not offer the accused the full range of due process and other constitutional rights normally attendant to such adjudications. *Buckley v. Butler,* 825 F.2d 895, 902-03 (5th Cir. 1987).

The petitioner has not identified any Supreme Court precedent or other federal authority that would give rise to a constitutional violation. There is no precedent from the United States Supreme Court specifically holding that the Constitution guarantees a right to speedy sentencing. In fact, the United States Supreme Court recently held that the Sixth Amendment speedy trial right does not extend beyond conviction. *See Betterman v. Montana,* 136 S.Ct. 1609 (2016).

Nevertheless, this Court is cognizant of the Supreme Court's dicta in *Betterman*, stating "[f]or inordinate delay in sentencing, although the Speedy Trial Clause does not govern, a defendant may have other recourse, including, in appropriate circumstances, tailored relief under the Due Process Clauses of the Fifth and Fourteenth Amendments." *Id.* at 1612. However, even in recognizing that possibility, the lone justice who discussed how such a "speedy sentencing" situation could be reviewed suggested that factors could include the length and reason for the delay and whether it resulted in prejudice. *Id.* at 1619 (Sotomayor, J. concurring). As set forth above, the delay in this matter is attributable, in part, to a lengthy and somewhat convoluted sentencing and appeals process. That delay is not properly attributable solely to the State. More importantly, the petitioner has failed to show how the three year delay in filing of the third habitual offender bill resulted in prejudice. As mentioned, the habitual offender bill complained of was the third such filing by the State after the prior two habitual offender proceedings were

found deficient on appeal.  As such, the petitioner has always known that the State intended to pursue a multiple bill, and based on the prior proceedings, was aware that his sentence could be fifty years or greater.  Furthermore, the petitioner was given credit for time served.  As such, he is not serving any time in excess of what is statutorily allowed.

Even if the Court construes the Supreme Court's dicta in *Betterman* as creating a "speedy sentencing" right through the Fourteenth Amendment, under the standard proposed by Justice Sotomayor, the petitioner still would not be entitled to relief.

The petitioner has not identified any Supreme Court precedent or other federal authority that would give rise to a constitutional violation, and the denial of relief by the State courts was not contrary to, or an unreasonable application of, Supreme Court precedent.  For the foregoing reasons, the petitioner is not entitled to relief on his claims.

## Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied.  An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

*Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original).  In the instant case, the Court finds that reasonable jurists would not debate the denial of the petitioner's § 2254 application or the correctness of the procedural ruling.  Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## **<u>RECOMMENDATION</u>**

It is recommended that the petitioner's application for habeas corpus relief be dismissed, with prejudice, as lacking merit.  It is further recommended that, in the event that the petitioner seeks to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on December 30, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**